# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8800 | **DATE** | 9/21/2004 |
| **CASE TITLE** | Canadian Pacific vs. Williams Hayward | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. National Steel Car's motion to dismiss Count II of Williams-Hayward's counterclaims is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 21 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 154 |
| | Copy to judge/magistrate judge. | | |
| TH | courtroom deputy's initials | 2004 SEP 21 AM 8:34 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



CANADIAN PACIFIC RAILWAY COMPANY, )
a Canadian Corporation, )
)
              Plaintiff, )
) No. 02 C 8800
      v. )
)
WILLIAMS-HAYWARD PROTECTIVE )
COATINGS, INC., an Illinois Corporation, )
)
             Defendant. )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge

     Counter-Defendant Williams-Hayward filed a counterclaim against Involuntary Plaintiff National Steel Car, Limited ("NSC") alleging claims of contribution and indemnity. NSC has moved to dismiss these claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, NSC's motion to dismiss is granted.

## LEGAL STANDARDS

### 1. Rule 12(b)(6) Standards

     A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, not the merits of a claim. *See Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). When evaluating a motion to dismiss, the Court views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). Dismissal is appropriate only where it appears beyond doubt that under

1

no set of facts would the plaintiff's allegations entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## BACKGROUND

Much of the relevant background of this case has been described by the Court in its prior opinion addressing Williams-Hayward's motion to dismiss. *See Canadian Pacific Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, 2003 WL 1907943 (N.D. Ill. Apr. 17, 2003). In sum, Plaintiff Canadian Pacific Railway Company ("CP Rail") is a Canadian corporation with its principal place of business in Alberta, Canada. Defendant Williams-Hayward is an Illinois corporation engaged in the business of manufacturing paint. Involuntary Plaintiff NSC is a Canadian rail car manufacturer who contracted with CP Rail to provide railway cars for the transportation of paper.

During the manufacture of the railway cars for CP Rail, problems arose concerning the quality of the paint provided by Williams-Hayward and applied by NSC. Eventually, CP Rail stopped accepting cars that had been treated with Williams-Hayward's paint. CP Rail thereafter sued Williams-Hayward on the following claims: breach of warranty, breach of implied warranty of fitness, breach of implied warranty of merchantability, fraud,[1] unjust enrichment and promissory estoppel. Upon order of the court, CP Rail filed an amended complaint, naming NSC as an "involuntary plaintiff" under Rule 19. (R. 27-1, Am. Compl. at ¶ 2.) Williams-Hayward then filed counterclaims against both CP Rail and NSC. (R. 42-1, Countercl. at p.14-17; R. 95-1, Supplement to Countercl. at 1-7.)

NSC moved to dismiss counts two and four of Williams-Hayward's counterclaims. (R. 99-1, Counter-Def.'s Mot. To Dismiss at 1.) Williams-Hayward subsequently moved to voluntary dismiss counts four, five, six and seven of its counterclaims. (R. 112-1, Def's Mot. To

---
[1] The claim for fraud has since been dismissed.

2

Dismiss.) The Court granted this motion and denied NSC's motion to dismiss count four as moot. (R. 113-1, Min. Order.) NSC's motion to dismiss count two of Williams-Hayward's counterclaims remains for disposition.

## ANALYSIS

In count two of its counterclaims, Williams-Hayward alleges that in the event it is found liable to Plaintiff CP Rail, it is entitled to contribution and indemnity from NSC for the amount of the judgment against it. (R. 42-1, Countercl. at ¶ 18.) NSC moves to dismiss count two for Williams-Hayward's failure to state any claim upon which relief can be granted.

### I. Claim For Contribution

Illinois law recognizes two actions for contribution, one statutory and the other derived from common law. NSC moves to dismiss the claim for contribution on the grounds that Williams-Hayward is only potentially subject to liability in contract and, therefore, has no right to contribution under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/2 ("the Contribution Act"). NSC further argues that Williams-Hayward has no cause of action for equitable contribution because Williams-Hayward has not alleged that it and NSC were acting as insurers in this case. Although Williams-Hayward did not specify in its pleadings which of these actions it is alleging, in its response to NSC's motion to dismiss, Williams-Hayward asserts it is entitled to relief under the common law equitable right to contribution. (R. 127-1, Counter-Pl.'s Resp. at 2.) Under either approach, Williams-Hayward fails to state a claim of contribution.

#### A. The Contribution Act

In 1979 the Illinois legislature enacted the Contribution Act to codify the Illinois Supreme Court's holding in *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1, 374 N.E.2d 437, 15 Ill. Dec. 829 (1977). *Doyle v. Rhodes*, 101 Ill. 2d 1, 8, 461 N.E.2d

382, 385, 77 Ill. Dec. 759, 762 (1984). The Contribution Act provides that "where 2 or more persons are *subject to liability in tort* arising out of the same injury to person or property...there is a right of contribution among them even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a) (emphasis added). A party subject to liability in contract cannot make a valid claim for contribution under the Contribution Act. *See Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg*, 882 F. Supp. 713, 723-24 (N.D. Ill. 1995) ("The only duty which Boulevard is alleged to have breached is a contractual one, thereby making a claim of contribution inapplicable"); *Granville Beach Condo. Ass'n v. Granville Beach Condos., Inc.*, 227 Ill. App. 3d 715, 723, 592 N.E.2d 160, 165, 169 Ill. Dec. 673, 678 (1992) (no right of contribution under Contribution Act where claims were to recover economic loss); *Hennepin Drainage & Levee Dist. v. W.H. Klingner*, 187 Ill. App. 3d 710, 712, 543 N.E.2d 967, 969, 135 Ill. Dec. 399, 401 (1989) (party subject to liability for breach of contract precluded from bringing third party complaint for contribution).

Williams-Hayward is not subject to any liability in tort. CP Rail is suing Williams-Hayward for breach of express warranty, breach of implied warranty of fitness, breach of implied warranty of merchantability, unjust enrichment and promissory estoppel. All of these claims are grounded in contract doctrine. *See 2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 307, 555 N.E.2d 346, 348, 144 Ill. Dec. 227, 229 (1990); *U.S. Home Corp. v. George W. Kennedy Const. Co., Inc.*, 617 F. Supp. 893, 897 (N.D. Ill. 1985); *Hayes Mech., Inc. v. First Indus., L.P.*, 812 N.E.2d 419, 425, 285 Ill. Dec. 599, 606 (2004); *F.D.I.C. v. Gravee*, 966 F. Supp. 622, 630 (N.D. Ill. 1997); *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chem. Group, Inc.*, 725 F.2d 1140, 1142 (7th Cir.

1984). Accordingly, Williams-Hayward cannot seek contribution from NSC under the Contribution Act.

**B. Common law contribution**

Williams-Hayward argues its claim for contribution is based on the common law right to contribution, which is not limited to parties subject to tort liability. The right to common law contribution stems from "the compulsory payment by a joint obligor of more than his share of a common obligation." *Ruggio v. Ditkowsky*, 147 Ill. App. 3d 638, 642, 498 N.E.2d 747, 750, 101 Ill. Dec. 423, 426 (1986). To succeed on a contribution claim, the co-obligor must disclose that he has paid more than his just proportion of the joint indebtedness as well as the amount of that excess. *Id.*

NSC contends that the common law contribution claim is only available in the narrow context of contribution among co-insurers. While it appears that many equitable contribution suits do arise in the context of co-insurers, some case law decided after the enactment of the Contribution Act involves common law contribution claims among parties that are neither tortfeasors nor co-insurers. These cases are limited, however, to instances where the parties, either by agreement or by statute, were obligated together to a third party for a financial obligation. *See e.g., Ruggio v. Ditkowsky*, 147 Ill. App. 3d 638, 640, 498 N.E.2d 747, 749, 101 Ill. Dec. 423, 425 (1986) (plaintiff seeking contribution from defendants on two promissory notes each of them cosigned); *Tembrina v. Simos*, 208 Ill. App. 3d 652, 655, 567 N.E.2d 536, 538, 153 Ill. Dec. 578, 580 (1991) (plaintiff seeking contribution for payment of mortgage where parties were each jointly and severally liable for payments); *Fletcher v. Marshall III*, 260 Ill. App. 3d 673, 673, 632 N.E.2d 1105, 1106, 198 Ill. Dec. 494, 495 (1994) (plaintiff seeking contribution from defendant who co-signed an apartment lease with plaintiff); *Aardema v. Fitch*,

291 Ill. App. 3d 917, 919, 684 N.E.2d 884, 886, 225 Ill. Dec. 893, 895 (1997) (plaintiff seeking contribution from fellow directors for their common corporate obligation to the IRS). In contrast, Williams-Hayward does not allege it and NSC have a joint obligation to CP Rail in which Williams-Hayward has paid more than its proportion. Neither does it allege any amount in excess that it has paid. The only debt alleged by Williams-Hayward is the amount owed to it by NSC, making Williams-Hayward an obligee, not an obligor. (R. 42-1, Countercl. at ¶ 11.) Without an allegation of joint obligation, Williams-Hayward cannot state a claim for equitable contribution. Accordingly, Williams-Hayward's claim for contribution is dismissed.

## II. Claim For Indemnity

NSC challenges Williams-Hayward's implied tort indemnity claim and implied contract indemnity claim. Although Williams-Hayward has not specified which implied indemnity doctrine it is pleading, it has failed to plead either sufficiently.

### A. Implied tort indemnity

NSC argues that Williams-Hayward cannot allege a claim for implied tort indemnity because the claims against Williams-Hayward from which it is seeking indemnity sound in contract not tort. NSC also argues Williams-Hayward has not pled the presence of a pre-tort relationship, a necessary element of an implied indemnity claim based upon quasi-contractual principles. Williams-Hayward counters that its allegation of a buyer-seller relationship satisfies the requirement of a pre-tort relationship.

The doctrine of implied tort indemnity "shifts the entire responsibility for *tort-related losses* from a blameless tortfeasor to a truly culpable one." *Zielinski v. Miller*, 277 Ill. App. 3d 735, 739, 660 N.E.2d 1289, 1293, 214 Ill. Dec. 340, 344 (1995) (emphasis added). The Illinois Supreme Court has identified two rights of indemnification stemming from the implied tort

6

indemnity doctrine – active-passive indemnity and quasi-contract indemnity. *Allison v. Shell Oil Co.*, 113 Ill. 2d 26, 28-31, 495 N.E.2d 496, 498-99, 99 Ill. Dec. 115, 117-18 (1986). Since the Contribution Act abolished active-passive indemnity, Williams-Hayward must rely on the quasi-contractual right to indemnity for implied tort indemnity. *Id.* at 34. To establish such a claim, Williams-Hayward must allege a pre-tort relationship with NSC and a qualitative difference in their conduct in the occurrence. *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 255, 527 N.E.2d 1248, 1251, 123 Ill. Dec. 473, 476 (1988).

Williams-Hayward implicitly suggests it is indeed pleading a quasi-contractual right to indemnity by arguing that its buyer-seller relationship with NSC meets the requirement of a pre-tort relationship. Williams-Hayward, however, has failed to establish an even more requisite element of a quasi-contractual right to indemnity -- the underlying tort the "pre-tort" relationship preceded. *See Zielinski*, 277 Ill. App. 3d at 739 (dismissing claims of implied indemnity where underlying complaint sounded in contract, not in tort). The Seventh Circuit has held that a claim for implied indemnity only exists when the indemnitee is guiltless with respect to the "underlying tort." *Mizuho Corp. Bank v. Cory & Assoc., Inc.*, 341 F.3d 644, 652-53 (7th Cir. 2003). As discussed above, CP Rail has not asserted any claims sounding in tort against Williams-Hayward. Accordingly, Williams-Hayward cannot seek indemnification from NSC on the basis of quasi-contractual implied indemnity.

Even if it were permissible to indemnify a party for an underlying contractual claim pursuant to the doctrine of quasi-contractual implied immunity, Williams-Hayward has not alleged a valid pre-tort relationship. Classic pre-tort relationships giving rise to a duty to indemnify are those of lessor/lesee, employer/employee, owner/lessee, and master/servant. *Van Slambrouck v. Economy Baler Co.*, 105 Ill. 2d 462, 469-70, 475 N.E.2d 867, 870-71, 86 Ill. Dec.

488, 491-92 (1985). A buyer-seller relationship is not a sufficient pre-tort relationship to support a traditional indemnity claim. *Jethroe v. Koehring Co.*, 603 F. Supp. 1200, 1204 (S.D. Ill. 1985). *See also AMF, Inc. v. Victor J. Andrew High School*, 176 Ill. App. 3d 337, 342, 526 N.E.2d 584, 587, 122 Ill. Dec. 325, 328 (1988.)

In support of its argument, Williams-Hayward cites *Maxfield v. Simmons*, 96 Ill. 2d 81, 86-87, 499 N.E.2d 110, 112, 70 Ill. Dec. 236, 238 (1983), which found a buyer-seller relationship sufficient to assert an "upstream"[2] indemnity claim. But Williams-Hayward is asserting a "downstream" indemnity claim. The Illinois Supreme Court has found that a buyer-seller relationship does not support a "downstream" indemnity cause of action. *See Van Slambrouck*, 105 Ill. 2d at 470. Further, *Maxfield* specifically states any potential liability from the indemnification results from tortious conduct, not a breach of contract. *Maxfield*, 96 Ill. 2d at 87. *See also Bloomer Choclate Co. v. Bongards Creameries, Inc.*, 635 F. Supp. 919, 931 (N.D. Ill. 1986) (citing authority limiting the availability of a buyer-seller indemnity to instances where a defendant's liability stems from an underlying tort claim, not a breach of contract or breach of warranty claim). Accordingly, Williams-Hayward cannot plead a claim of implied tort indemnity.

### B. Implied contractual indemnity

NSC argues that Williams-Hayward has not alleged facts sufficient to support a claim for implied contractual indemnity. Specifically it argues count two does not allege a breach of contract between Williams-Hayward and either NSC or CP Rail. NSC also contends Williams-Hayward has not alleged that NSC's breach of a contract between NSC and Williams-Hayward

---

[2] "Upstream" indemnity involves the shifting of liability to a manufacturer or previous user of a product, while "downstream" indemnity involves the shifting of liability to a subsequent user or handler. *De Anda v. Midland-Ross Corp.*, 644 F. Supp. 263, 265 (N.D. Ill 1986).

8

caused a breach of a contract between Williams-Hayward and CP Rail or that this second alleged breach was contemplated as a probable result of the first breach.

A claim for implied contractual indemnity exists where "one party's breach of contract causes a second party to breach a separate contract with a third party." *Carrillo v. Jam Prods., Ltd.*, 173 Ill. App. 3d 693, 697, 527 N.E.2d 964, 967, 123 Ill. Dec. 326, 329 (1988). Under these circumstances, the second party may shift its contractual liability to the first party. *Id.* This result is justified provided the damages arising from the first party's breach were reasonably within the contemplation of the parties as a probable result of that breach. *Case Prestressing Corp. v. Chicago College of Osteopathic Medicine*, 118 Ill. App. 3d 782, 788, 455 N.E.2d 811, 816, 74 Ill. Dec. 382, 387 (1983).

In the context of this case, for Williams-Hayward to successfully seek indemnification from NSC for any potential liability to CP Rail, Williams-Hayward must allege that NSC's breach of its contract with Williams-Hayward caused Williams-Hayward to breach a separate contract with CP Rail. Further Williams-Hayward would have to allege that CP Rail's damages were reasonably contemplated by the parties as a probable result of NSC's breach of its contract with Williams-Hayward.

Even drawing all reasonable inferences in favor of Williams-Hayward, Williams-Hayward has not pled the requisite elements of an implied contractual indemnity claim. First, Williams-Hayward does not allege anywhere in its original counterclaims or its amended counterclaims either the presence of a contract between itself and CP Rail or a subsequent breach of this contract by Williams-Hayward. Second, although Williams-Hayward does allege in paragraph 10 of its counterclaims that NSC breached its contract with Williams-Hayward by failing to pay Williams-Hayward for any of the paint it purchased, Williams-Hayward fails to

9

reallege or otherwise incorporate this allegation into count two. (R. 42-1, Countercl. at ¶ 13.)

Third, even if Williams-Hayward did make these allegations, it fails to allege how NSC's breach of contract caused a subsequent breach of a contract between Williams-Hayward and CP Rail. Williams-Hayward alleged it entered into a contract with NSC for the purchase of paint, which NSC allegedly breached by not paying for the paint it purchased. (R. 42-1, Countercl. at ¶ 6, 10.) It is unclear how NSC's failure to pay for the paint could breach any contract between Williams-Hayward and CP Rail. Williams-Hayward alleges NSC improperly and incorrectly applied and cured the paint in the railway cars it delivered to CP Rail. (R. 42-1, Countercl. at ¶ 16.) Williams-Hayward, however, has not alleged it had a contract governing NSC's method of paint curing or paint application in the railway cars. Consequently, Williams-Hayward fails to state a claim for indemnification based on implied contractual indemnity.

## CONCLUSION

For the reasons set forth above, Counter-Defendant NSC's motion to dismiss is granted. Count two is dismissed without prejudice for failure to state a claim upon which relief can be granted.

Dated: September 21, 2004

ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge